JOHN M. GENGA (SB# 125522)
jgenga@gengalaw.com
GENGA & ASSOCIATES
16501 Ventura Boulevard, Suite 400
Encino, CA 91436
(747) 231-3400 | Fax: (818) 474-7070

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKIE ALVAREZ, FRIDA AQUINO, CAREN AVEDON, SUSAN AVEDON, CARLOS BARRERA, ANTONIETA BERNAHOLA TALLEDO, ELSY BORJA, PETER BOS, FIDELINA CONTRERAS, CLAUDIA DE LA CRUZ, ZENAIDA "ROSE" DE LEON, ANTONIO DE LOS SANTOS, MERARI DIAZ ORDAZ, LIZETTE ESPINOSA, ESTELLA GARCIA, JOSEPH GARCIA, CAROL ANNE GILLESPIE, SOLEDAD GLOVA, DENNIS GRAY, BEATA G. GRISSOM, EDWIN GUERRA HERNANDEZ, KADI REAL ESTATE PROPERTIES LLC, CHARIE GUZMAN, SAMANTHA GUZMAN, SAMMY GUZMAN, REMBERTO JARA JARA, ROBERT KUSENDA, JANICE LAGESSE, SAFFIYA LAKHANI, PEARLE McDONALD, MARIA METCALF, ANTHONY MILLOT, ALEJANDRINA NAVARRO, ROSE NORIEGA, DAVID NOVELLI, MOHAMMAD PATEL, MAURICIO POBLETE, MARC R. SARBARNECK, CYNTHIA "CC" SUMMERFIELD, GIUSEPPE VENEZIANO, LUIS VIZCAINO, CORNELIUS WILLIAMS, HAI YING "WENDY" ZHOU and YUN CHUN "DONNA" ZHOU,<br><br>　　　　　Plaintiffs, | Case No. _____<br><br>COMPLAINT FOR VIOLATION OF:<br><br>　　SECURITIES AND EXCHANGE ACT §10(b) and RULE 10b-5;<br><br>　　SECURITIES ACT § 12; and<br><br>　　CAL. CORP. CODE §§ 25110, 25401 and 25504;<br><br>and FRAUD and BREACH OF CONTRACT.<br><br>DEMAND FOR JURY TRIAL. |

-1-

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

vs.

LINH THUY LE, TRONG HOANG
LUU, JOHN F. RILEY, CHRISTINE
NGUYEN, INVENTIS VENTURES,
LLC, a Utah limited liability company,
INVENTIS VENTURES INC., a
California corporation, INVENTIS
VENTURES HOLDING INC., a
California corporation, INVENTIS
HOLDINGS, INC., a California
corporation, INVENTIS VENTURES
ELITE TRUST, a California corporation,
WOW WIN ON WEALTH., a California
corporation, GOLDEN TRADING G.R.
INTERNATIONAL INC., a California
corporation, GRUPO ONCE11 INC., a
California corporation, VIVERE INICIO,
a business of unknown form and origin,
and DOES 1through 10, inclusive,

Defendants.

## **INTRODUCTION**

1.      This case arises from a fraudulent scheme perpetrated by defendants
Le and Luu, with the knowing material assistance and participation of defendants
Riley and Nguyen, that induced hundreds of unwitting persons to "loan" large
sums of money for "investments" to be made in or by a company called Inventis,
which took the form of or later was succeeded by the companies named as the
remaining defendants in the above caption (collectively with Le, Luu, Riley and
Nguyen, "Defendants").  Defendants committed their fraud largely against persons
elderly or otherwise vulnerable or of limited economic means, education and
command of the English language, including the plaintiffs who bring this action
("Plaintiffs").  Defendants lured investors, including Plaintiffs, into providing
money for an "investment portfolio" (the "Inventis Scheme" or "Inventis

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

Venture") with false promises of guaranteed returns of as much as 15% per month or over 400% per year, together with a return of principal after one year, if they invested a minimum of $5,000. Defendants told investors such as Plaintiffs that their funds would go to "projects" and businesses that included real estate, health insurance and banking, and that their investments were safe, legally "approved" or compliant, "guaranteed" and "insured." These materially false promises – made in writing, including via contracts, as well as orally in presentations made largely by Le, Riley and Nguyen – misled investors, including Plaintiffs, to part with funds that Defendants used not for legitimate business activities as described, but rather largely for their own personal benefit. Plaintiffs seek recovery of the money they lost with or were promised by Defendants, together with interest thereon at the statutory rate, costs, attorneys' fees and punitive damages adequate to make an example of and to punish Defendants for their fraudulent and despicable conduct undertaken in conscious disregard of Plaintiffs' safety and rights and which has subjected them to cruel and unjust hardship.

## THE PARTIES

### A.   Plaintiffs

2.      Plaintiff Frankie Alvarez is an individual who resides in the County of Los Angeles, State of California.

3.      Plaintiff Frida Aquino is an individual who resides in the County of Orange, State of California.

4.      Plaintiff Caren Avedon is an individual who resides in the County of Orange, State of California.

5.      Plaintiff Susan Avedon is an individual who resides in the County of Los Angeles, State of California.

6.      Plaintiff Carlos Barrera is an individual who resides in the County of Los Angeles, State of California.

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

7.     Plaintiff Antonieta Bernahola Talledo is an individual who resides in the County of San Bernardino, State of California.

8.     Plaintiff Elsy Borja is an individual who resides in the County of Los Angeles, State of California.

9.     Plaintiff Peter Bos is an individual who resides in the County of Canyon, State of Idaho.

10.     Plaintiff Fidelina Contreras is an individual who resides in the County of Los Angeles, State of California.

11.     Plaintiff Claudia De La Cruz is an individual who resides in the County of Los Angeles, State of California.

12.     Plaintiff Zenaida De Leon, also known as Rose De Leon, is an individual who resides in the County of Los Angeles, State of California.

13.     Plaintiff Antonio De Los Santos is an individual who resides in the County of San Bernardino, State of California.

14.     Plaintiff Merari Diaz Ordaz is an individual who resides in the County of Kern, State of California.

15.     Plaintiff Lizette Espinosa is an individual who resides in the County of Los Angeles, State of California.

16.     Plaintiff Estella Garcia is an individual who resides in the County of San Bernardino, State of California.

17.     Plaintiff Joseph Garcia is an individual who resides in the County of San Bernardino, State of California.

18.     Plaintiff Carol Anne Gillespie is an individual who resides in the County of Orange, State of California.

19.     Plaintiff Soledad Glova is an individual who resides in the County of Los Angeles, State of California.

20.     Plaintiff Dennis Gray is an individual who resides in the County of San Diego, State of California.

-4-

21. Plaintiff Beata G. Grissom is an individual who resides in Las Vegas, Nevada.

22. Plaintiff Edwin Guerra Hernandez is an individual who resides in the County of Orange, State of California.

23. Plaintiff Kadi Real Estate Properties LLC is a limited liability company organized and existing under the laws of the State of California.

24. Plaintiff Charie Guzman is an individual who resides in the County of Orange, State of California

25. Plaintiff Samantha Guzman is an individual who resides in the County of Orange, State of California.

26. Plaintiff Sammy Guzman is an individual who resides in the County of Orange, State of California.

27. Plaintiff Remberto Jara Jara is an individual who resides in the County of Los Angeles, State of California.

28. Plaintiff Robert Kusenda is an individual who resides in the County of Riverside, State of California.

29. Plaintiff Janice LaGesse is an individual who resides in the County of San Diego, State of California.

30. Plaintiff Saffiya Lakhani is an individual who resides in the County of Orange, State of California.

31. Plaintiff Pearle McDonald is an individual who resides in the State of Connecticut.

32. Plaintiff Maria Metcalf is an individual who resides in the County of San Diego, State of California.

33. Plaintiff Anthony Millot is an individual who resides in the County of Los Angeles, State of California.

34. Plaintiff Alejandrina Navarro is an individual who resides in the County of San Diego, State of California.

35.     Plaintiff Rose Noriega is an individual who resides in the County of Los Angeles, State of California.

36.     Plaintiff David Novelli is an individual who resides in the County of Orange, State of California.

37.     Plaintiff Mohammad Patel is an individual who resides in the County of Orange, State of California.

38.     Plaintiff Mauricio Poblete is an individual who resides in the County of Los Angeles, State of California.

39.     Plaintiff Marc R. Sarbarneck is an individual who resides in the State of Idaho.

40.     Plaintiff Cynthia Summerfield, also known as CC Summerfield, is an individual who resides in the County of San Diego, State of California.

41.     Plaintiff Giuseppe Veneziano is an individual who resides in the County of Los Angeles, State of California.

42.     Plaintiff Luis Vizcaino is an individual who resides in the County of Riverside, State of California.

43.     Plaintiff Cornelius Willams is an individual who resides in the County of Los Angeles, State of California.

44.     Plaintiff Hai Ying Zhou, also known as Wendy Zhou, is an individual who resides in the County of Los Angeles, State of California.

45.     Plaintiff Yun Chun Zhou, also known as Donna Zhou, is an individual who resides in the County of Los Angeles, State of California.

**B.     Defendants**

46.     Defendant Le is an individual who resides in the County of Orange, State of California.  On information and belief, Le is the Manager of Ventures, the CEO, CFO, Secretary and a Director of Holdings, a signatory to the bank accounts for both entities and licensed in the state of California to sell life insurance.

47.      Defendant Luu is an individual who is married to Le and resides in the County of Orange, State of California.  On information and belief, Luu is a manager of Ventures and a signatory to the bank accounts for it and Holdings; he formerly held licenses under the auspices of the National Association of Securities Dealers, Inc. ("NASD") to sell securities under the laws of the United States and the State of California, which the NASD revoked more than twenty years ago for non-compliance, as a result of which Plaintiffs now understand he may no longer associate with any NASD member.

48.      Defendant Inventis Ventures, LLC is a limited liability company organized and existing under the laws of the State of Utah, with its principal place of business in the County of Orange, State of California, and, on information and belief, is owned and controlled entirely by Le and Luu.  The Utah Secretary of State website reflects that it was "administratively dissolved" by July 17, 2024. On information and belief, Le and Luu also utilized, as a successor to the dissolved Utah LLC or otherwise an entity called Inventis Ventures Inc., a corporation formed on May 21, 2023 and currently existing under the laws of the State of California.  The Utah LLC and California corporation are thus referred to as one, and collectively, as "Ventures."  Both Le and Luu appear as managers on its Utah LLC organizational documents and have signing authority over Venture's bank accounts.  If Ventures ever had any corporate existence separate from Le and/or Luu, it no longer does because, among other things, its registration with the Utah Secretary of State has lapsed, its bank accounts have a zero balance and its office is closed.  Plaintiffs are further informed and believe and thereupon allege that Ventures has never been registered with the SEC in any capacity and has not registered any offering of its securities, notwithstanding that it claims to engage in the business of "strategic assisted investment planning with progressive repeatable return on investment."

49.    Defendant Inventis Ventures Holding Inc., also referred to in documents as Inventis Holdings, Inc. ("Holdings"), is a corporation organized and existing under the laws of the State of California, with its principal place of business in the County of Orange, State of California.  On information and belief, Holdings is owned and controlled entirely by Le and Luu – both of whom have signing authority over its bank accounts – and that if it ever had any corporate existence separate from Le and/or Luu, it no longer does because, among other things, its registration with the California Secretary of State has lapsed, its bank accounts have a zero balance and its office is closed.  Plaintiffs are further informed and believe and thereupon allege that Holdings has never been registered with the SEC in any capacity and has not registered any offering of its securities, notwithstanding that, together with Ventures, it claims to engage in the business of "strategic assisted investment planning with progressive repeatable return on investment."

50.    Defendant Inventis Ventures Elite Trust ("Trust") is a corporation organized and existing under the laws of the State of California, with its principal place of business in the County of Orange, State of California.  On information and belief, Trust is owned and controlled entirely by Le and Luu and was used by them to receive funds diverted from Plainitffs' loans to Ventures and Holdings for Le and Luu to use personally.

51.    Defendant Wow Win on Wealth ("WoW") is a California corporation formed in 2022 by Le, with its principal place of business in Tustin, California.  According to corporate records, Le is the CEO and Director, and Luu is the CFO, Secretary, and agent for service of process.  Le and Luu are also signatories to its bank accounts.  WoW purported to offer loans that would generate upfront cash and be invested so that it could provide monthly payments to investors.

52.    Defendant Golden Trading G.R. International Inc. ("Golden Trading") is a corporation organized and existing under the laws of the State of California.

-8-

Plaintiffs are informed and believe and on such grounds allege that Le and Luu steered at least two Plaintiffs herein to make similar investments in Golden Trading when the Inventis Scheme began to collapse, such that Golden Trading itself became part of the Inventis Scheme.

53.    Defendant Grupo Once11 Inc. ("GO11") is a corporation organized and existing under the laws of the State of California.  Plaintiffs are informed and believe and on such grounds allege that Le and Luu steered at least one Plaintiff herein to make similar investments in GO11 when the Inventis Scheme began to collapse, such that GO11 itself became part of the Inventis Scheme.

54.    Defendant Vivere Inicio is a business of unknown form and domicile. Plaintiffs are informed and believe and on such grounds allege that Le and Luu steered at least one Plaintiff herein to make similar investments in Vivere Inicio when the Inventis Scheme began to collapse, such that Vivere Inicio itself became part of the Inventis Scheme.

55.    The term "Inventis" as used hereinafter shall and does mean and refer collectively to Ventures, Holdings, Trust, WoW, Golden Trading, GO11 and Vivere Inicio, and to each of them.

**C.    <u>Doe Defendants and Co-Liability</u>**

56.    Plaintiffs do not presently know the true names and capacities of defendants sued as Does 1 through 10, inclusive, and therefore sue them by such fictitious names.  Plaintiffs will amend this pleading to state the true names and capacities of such fictitiously-named defendants if and when ascertained. Plaintiffs are informed and believes and on that basis allege that each of the fictitiously-named defendants is responsible in some manner for the occurrences, acts and omissions alleged herein, and by their conduct proximately caused the damages about which Plaintiffs complain.  As such, all references to Defendants hereinafter, including any or all of those sued by name, shall mean and include Does 1 through 10, inclusive.

57.    Plaintiffs allege on information and belief that a unity of interest and ownership exists among Defendants, and in particular between Le and Luu, on the one hand, and Ventures and Holdings on the other, such that accepting the fiction of their purported separate existence would work a fraud and injustice on Plaintiffs.  Plaintiffs thus ask the Court to ignore such fiction and pierce the corporate veil of Defendants Ventures and Holdings, behind which Defendants Le and Luu have attempted to hide, and find all Defendants, both named and sued as Does 1 through 10, inclusive, responsible as alter-egos for the unlawful and tortious conduct of each other.

58.    Plaintiffs are further informed and believe and on that basis allege that, at all relevant times, all Defendants, including Does 1 through 10, inclusive, acted as agents for or in concert with and/or conspired and agreed among each other to commit the wrongful acts alleged in this complaint, and that such wrongful acts were committed pursuant to and in furtherance of such agency, conspiracy and agreement, and with the consent and approval or under the direction and control of each of the Defendants.  As such, each of the Defendants has liability to Plaintiffs as a direct participant, co-conspirator, principal and/or aider and abettor of the wrongful acts alleged herein.

## JURISDICTION AND VENUE

59.    This Court has subject matter jurisdiction over the claims for relief asserted herein under federal law pursuant to 28 U.S.C. § 1331.

60.    This Court has supplemental subject matter jurisdiction over the state law claims asserted herein under 28 U.S.C. § 1367.

61.    This Court has personal jurisdiction over all named Defendants because they all reside in the County of Orange, State of California.

62.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all named Defendants reside in the County of Orange, State of California.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

**A.    Solicitation of Investors, Including Plaintiffs, for Inventis**

63.    Starting approximately in March 2022, Le and Inventis, by employees directed and controlled by Le, including Riley and Nguyen, solicited persons, including Plaintiffs, to invest in their fraudulent securities offerings.  Prior to Inventis, Le and Luu ran a variety of businesses out of their Tustin office, including insurance sales and sales of membership interests in WoW.  At least some Plaintiffs were told that they had to be members of WoW to invest in Inventis.

64.    As part of WoW, Le told prospective clients, including Plaintiffs, that they could make loans through WoW which would get invested to generate returns to cover the loan payments and provide income.  She identified Inventis as a vehicle to which a portion of the WoW loan proceeds would go to generate investment returns.

65.    By around March 2022, Le decided to allow investors, including Plaintiffs, to loan money to and invest in Inventis directly without joining the WoW program, and she and Luu began promoting Inventis.  They did so on the WoW website, and WoW investors were referred by Le, and by WoW employees directed by her, to the Inventis Venture.

66.    In some cases, Le personally met with potential Inventis investors.  Some such meetings took place at her home, and Luu attended at least some of them.  According to persons present at those meetings, Luu nodded approvingly when Le made representations about the use of funds and source of returns, and did not make any corrections to those representations.

67.    By around December 2022, as the fraudulent securities offering expanded, Le also recruited individuals in the local Latino community to work for Inventis and to make pitches to additional investors.  Le promised employees and certain investors referral fees if they brought new investors into Inventis.  Le set

-11-

the referral fee structure, which varied at her discretion, but it most commonly provided for payments of: (1) a 5% monthly fee on amounts invested for a period of one year, for employees who referred investors; and (2) 3% monthly on the same basis for investors who referred other investors.

68.    Inventis employees, largely Riley and Nguyen, conducted investor presentations not run by Le.  Plaintiffs are informed and believe and based thereon allege that Le trained employees on what to say to prospective investors at such meetings.  The presentations often took place at the Inventis office and largely in Spanish, English or Vietnamese.  At times, Defendants would arrange for current investors to line up to get envelopes representing their monthly earnings so that prospective investors would see this when they arrived at the company office for presentations.

69.    Le herself or Inventis employees at her direction, and in particular Riley and Nguyen, encouraged potential investors, including Plaintiffs, to invest that day and to pay in cash.  Many signed investment contracts immediately after attending presentations.  The agreements generally stated substantially as follows:

> In Consideration of the Lender loaning certain monies for the Corporate Capitalization to the Company, as a form of JVA (Joint Venture Arrangement) this loan agreement is extended with the explicit purpose of the Company investing in different emerging projects in its investment portfolio.

They further set forth the amount of the funds to be loaned by the Inventis investor, as well as an agreed return rate – typically a fifteen percent (15%) "monthly return consideration" or a 360% "combined return" per year – over a fixed term (usually a year), with the principal amount to be repaid in full at the defined term's end.

70.    Although later investors primarily spoke to Inventis employees, including Riley and Nguyen, Le continued to meet directly to pitch Inventis to investors who brought large amounts of money and/or who "looked professional."

-12-

The contracts for some such investors bore "VIP" designations. Yet neither Inventis, Le, nor any of the employees she trained took any steps to verify the accredited status of the investors they solicited and, as a result, many unaccredited investors invested in Inventis. Nor did Defendants provide a prospectus or other disclosure, oral or written, laying out possible investment risks.

71. Investments were memorialized in contract signed by either Le or by an Inventis employee that Le specifically authorized to sign. The following Plaintiffs entered into the following numbered contracts on the dates, for the principal amounts loaned for investment, and on the terms set forth below:

a. Frankie Alvarez:

| Date | No. | Amount | Terms |
|---|---|---|---|
| 2022-10-20 | 169 | $10,000 | 15%/mo for 1 yr |
| 2022-11-21 | 367 | $5,000 | 15%/mo for 1 yr |
| 2023-01-19 | 853 | $5,000 | 15%/mo for 1 yr |
| 2023-02-23 | 1187 | $5,000 | 15%/mo for 1 yr |
| 2023-03-21 | 2303-00273[1] | $5,000 | 15%/mo for 1 yr |
| 2023-07-21 | 2023-02034 | $10,000 | 15%/mo for 1 yr |
| 2023-08-28 | 2023-02577 | $10,000 | 15%/mo for 1 yr |
| TOTAL | | $50,000 | |

[1] Investor contracts in the early 2023 have numbers that begin with "2303" – likely meant to be "2023" – corrected later in 2023. This pleading designates contracts by numbers actually appearing on them, even though likely mistaken in early 2023.

b.    Frida Aquino:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2022-09-19 | 243 | $10,000 | 20% per mo for 1 yr |
| 2023-01-05 | 680 | $10,000 | 20% per mo for 1 yr |
| 2023-03-06 | S0032 | $10,000 | 20% per mo for 1 yr |
| 2023-07-11 | S0099 | $10,000 | 20% per mo for 1 yr |
| 2023-07-19 | S122 | $40,000 | 20% per mo for 1 yr |
| 2023-08-36 | S129 | $10,000 | 20% per mo for 1 yr |
| 2023-09-18 | S142 | $10,000 | 20% per mo for 1 yr |
| TOTAL | | $100,000 | |

c.    Caren Avedon:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2022-08-12 | 269 | $108,000 | 15% per mo for 1 yr |
| 2023-01-05 | 270-1 | $72,000 | 15% per mo for 1 yr |
| 2023-01-05 | 270-2 | $36,000 | 15% per mo for 1 yr |
| 2023-01-05 | 735 | $40,000 | 15% per mo for 1 yr |
| 2023-07-12 | 2023-01854 | $72,000 | 15% per mo for 1 yr |
| 2023-08-11 | 2023-03680 | $54,000 | 15% per mo for 1 yr |
| 2023-08-31 | 2023-02650 | $60,000 | 15% per mo for 1 yr |
| TOTAL | | $442,000 | |

d.    Susan Avedon:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2022-08-17 | 271 | $6,000 | 15% per mo for 1 yr |
| TOTAL | | $6,000 | |

e.

f.     Carlos Barrera:

| Date | No. | Amount | Terms |
|---|---|---|---|
| 2023-09-07 | 2023-02918 | $10,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$10,000** | |

g.     Antonieta Bernahola Talledo:

| Date | No. | Amount | Terms |
|---|---|---|---|
| 2022-12-19 | 548 | $10,000 | 15% per mo for 1 yr |
| 2023-06-27 | 2023-01575 | $10,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$20,000** | |

h.     Elsy Borja:

| Date | No. | Amount | Terms |
|---|---|---|---|
| 2022-06-16 | 386 | $5,000 | 435% annual for 1 yr |
| 2022-07-14 | 21 | $12,000 | 435% annual for 1 yr |
| 2022-09-23 | 385 | $10,000 | 15% per mo for 1 yr |
| 2022-10-21 | 119 | $20,000 | 435% annual for 1 yr |
| 2023-02-22 | 1203 | $5,000 | 360% annual for 1 yr |
| 2023-07-14 | 2023-01415 | $53,502.50 | 15% per mo for 1 yr |
| **TOTAL** | | **$105,502.50** | |

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

i.    Peter Bos:

| Date | No. | Amount | Terms |
|---|---|---|---|
| 2023-01-06 | 740 | $10,000 | 15% per mo for 1 yr |
| 2023-02-02 | 987 | $10,000 | 15% per mo for 1 yr |
| 2023-03-02 | 2303-00209 | $10,000 | 15% per mo for 1 yr |
| 2023-03-31 | 2303-00462 | $10,000 | 15% per mo for 1 yr |
| 2023-04-05 | 2023-00512 | $10,000 | 15% per mo for 1 yr |
| 2023-05-08 | 2023-00954 | $10,000 | 15% per mo for 1 yr |
| 2023-06-02 | 2023-01231 | $20,000 | 15% per mo for 1 yr |
| 2023-07-07 | 2023-01731 | $10,000 | 15% per mo for 1 yr |
| 2023-07-27 | 2023-03146 | $10,000 | 15% per mo for 1 yr |
| 2023-08-03 | 2023-02326 | $10,000 | 15% per mo for 1 yr |
| 2023-09-01 | 2023-02828 | $10,000 | 15% per mo for 1 yr |
| 2023-12-31 | | $50,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$170,000** | |

Mr. Bos entered into two contracts, Nos. 2303-00462 and 2023-02146, in the name of his son-in-law, J.D. Royer, but paid the principal himself.

j.    Fidelina Contreras:

| Date | No. | Amount | Terms |
|---|---|---|---|
| 2022-12-14 | 539 | $10,000 | 15% per mo for 1 yr |
| 2023-04-04 | 2303-00496 | $10,000 | 15% per mo for 1 yr |
| 2023-08-01 | 2023-02273 | $10,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$30,000** | |

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

k.   Claudia De La Cruz:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2022-11-28 | 386 | $50,000 | 15% per mo for 1 yr |
| 2022-12-20 | 576 | $5,000 | 15% per mo for 1 yr |
| 2023-02-02 | 990 | $60,000 | 15% per mo for 1 yr |
| 2023-05-12 | 2023-01-73 | $10,000 | 15% per mo for 1 yr |
| 2023-07-01 | 2023-01990 | $100,000 | 15% per mo for 1 yr |
| 2023-08-14 | 2023-02491 | $30,000 | 15% per mo for 1 yr |
| TOTAL | | $255,000 | |

l.   Zenaida "Rose" De Leon:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-02-08 | S015 | $10,000 | 20% per mo for 1 yr |
| 2023-07-07 | S126 | $30,000 | 20% per mo for 1 yr |
| 2023-07-07 | S127 | $10,000 | 445% annual for 1 yr |
| TOTAL | | $50,000 | |

m.   Antonio De Los Santos:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-09-14 | 2023-02980 | $10,000 | 15% per mo for 1 yr |
| TOTAL | | $10,000 | |

n.   Merari Diaz Ordaz:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-04-11 | 2023-00586 | $10,000 | 15% per mo for 1 yr |
| 2023-04-19 | 2023-00682 | $5,000 | 15% per mo for 1 yr |
| 2023-06-12 | 2023-01377 | $20,000 | 15% per mo for 1 yr |
| TOTAL | | $35,000 | |

o.     Lizette Espinosa

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-03-17 | 2303-00250 | $8,300.00 | 15% per mo for 1 yr |
| 2023-04-04 | 2303-00495 | $10,000.00 | 15% per mo for 1 yr |
| 2023-08-03 | 2023-02319 | $40,000.00 | 15% per mo for 1 yr |
| **TOTAL** | | **$58,300** | |

p.     Estella Garcia:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-08-28 | G-0161 | $10,000 | 360% annual for 1 yr |
| 2024-01-11 | | $5,000 | 600% annual for 1 yr |
| **TOTAL** | | **$15,000** | |

q.     Joseph Garcia:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-03-16 | 2303-00238 | $15,000 | 15% per mo for 1 yr |
| 2023-08-25 | G-0154 | $10,000 | 360% annual for 1 yr |
| **TOTAL** | | **$25,000** | |

r.     Carol Anne Gillespie:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-01-04 | 693 | $5,000 | 15% per mo for 1 yr |
| 2023-02-01 | 982 | $30,000 | 360% annual for 1 yr |
| 2023-02-01 | 987 | $20,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$55,000** | |

s.     Soledad Glova:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2022-09-22 | 247 | $5,000 | 15% per mo for 1 yr |
| 2023-08-24 | 2023-02740 | $11,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$16,000** | |

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

t.    Dennis Gray:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-02-28 | 1027 | $20,000 | 360% annual for 1 yr |
| **TOTAL** | | **$20,000** | |

u.    Beata G. Grissom:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-08-22 | 2023-02640 | $15,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$15,000** | |

v.    Edwin Guerra Hernandez:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-05-17 | 2023-01021 | $20,000 | 15% per mo for 1 yr |
| 2023-09-05 | 2023-02752 | $50,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$70,000** | |

Mr. Guerra Hernandez entered into the second contract listed above through his company, plaintiff Kadi Real Estate Properties LLC.

w.    Charie Guzman:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2022-11-07 | 260 | $10,000 | 15% per mo for 1 yr |
| 2022-12-01 | 436 | $10,000 | 15% per mo for 1 yr |
| 2023-01-03 | 630 | $10,000 | 15% per mo for 1 yr |
| 2023-01-15 | 800 | $10,000 | 15% per mo for 1 yr |
| 2023-05-03 | 2023-00838 | $10,000 | 15% per mo for 1 yr |
| 2023-06-02 | 2023-01206 | $10,000 | 15% per mo for 1 yr |
| 2023-06-29 | 2023-01580 | $10,000 | 15% per mo for 1 yr |
| 2023-08-24 | 2023-02628 | $10,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$80,000** | |

x.      Samantha Guzman:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-06-29 | 2023-01581 | $5,000 | 15% per mo for 1 yr |
| 2023-08-24 | 2023-02625 | $10,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$15,000** | |

y.      Sammy Guzman:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-02-02 | 966 | $10,000 | 15% per mo for 1 yr |
| 2023-06-02 | 2023-01204 | $10,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$20,000** | |

z.      Remberto Jara Jara:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-08-16 | 2023-02567 | $10,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$10,000** | |

aa.     Robert Kusenda:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-08-02 | 2023-02181 | $50,000 | 15% per mo for 1 yr |
| 2023-08-03 | 2023-02305 | $30,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$80,000** | |

bb.     Janice LaGesse:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2022-11-08 | 289 | $7,000 | 15% per mo for 1 yr |
| 2023-01-10 | 168 | $25,000 | 360% annual for 1 yr |
| 2023-01-19 | 849 | $25,000 | 360% annual for 1 yr |
| **TOTAL** | | **$57,000** | |

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

cc.    Saffiya Lakhani:

| **Date** | **No.** | **Amount** | **Terms** |
|---|---|---|---|
| 2023-05-03 | 2023-00847 | $10,000 | 15% per mo for 1 yr |
| 2023-08-24 | 2023-02626 | $15,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$25,000** | |

dd.    Pearle McDonald:

| **Date** | **No.** | **Amount** | **Terms** |
|---|---|---|---|
| 2022-11-08 | 288 | $5,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$5,000** | |

ee.    Maria Metcalf:

| **Date** | **No.** | **Amount** | **Terms** |
|---|---|---|---|
| 2023-02-28 | 1026 | $10,000 | 360% annual for 1 yr |
| **TOTAL** | | **$10,000** | |

ff.    Anthony Millot:

| **Date** | **No.** | **Amount** | **Terms** |
|---|---|---|---|
| 2022-10-04 | | $50,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$50,000** | |

gg.    Alejandrina Navarro:

| **Date** | **No.** | **Amount** | **Terms** |
|---|---|---|---|
| 2023-01-09 | 763 | $15,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$15,000** | |

hh.    Rose Noriega:

| **Date** | **No.** | **Amount** | **Terms** |
|---|---|---|---|
| 2022-08-12 | | $50,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$50,000** | |

ii.    David Novelli:

| Date | No. | Amount | Terms |
|---|---|---|---|
| 2022-07-01 | 165 | $10,000 | 15% per mo for 1 yr |
| 2022-08-26 | 166 | $30,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$40,000** | |

jj.    Mohammad Patel:

| Date | No. | Amount | Terms |
|---|---|---|---|
| 2023-05-03 | 2023-00848 | $15,000 | 15% per mo for 1 yr |
| 2023-08-24 | 2023-02627 | $30,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$45,000** | |

kk.    Mauricio Poblete:

| Date | No. | Amount | Terms |
|---|---|---|---|
| 2023-08-29 | 2023-02739 | $11,000.00 | 15% per mo for 1 yr |
| **TOTAL** | | **$11,000** | |

ll.    Marc R. Sarbarneck:

| Date | No. | Amount | Terms |
|---|---|---|---|
| 2022-12-05 | 464 | $10,000 | 15% per mo for 1 yr |
| 2023-03-07 | 2303-00107 | $20,000 | 15% per mo for 1 yr |
| 2023-07-14 | 2023-01895 | $30,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$60,000** | |

mm.   Cynthia "CC" Summerfield:

| Date | No. | Amount | Terms |
|---|---|---|---|
| 2022-10-17 | 88 | $25,000 | 435% annual for 1 yr |
| 2022-10-17 | 89 | $25,000 | 15% per mo for 1 yr |
| **TOTAL** | | **$50,000** | |

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

nn.    Giuseppe Veneziano:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2022-11-21 | 366 | $10,000 | 15% per mo for 1 yr |
| 2023-04-04 | 2023-00598 | $10,000 | 15% per mo for 1 yr |
| TOTAL | | $20,000 | |

oo.    Luis Vizcaino:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2022-06-21 | 119 | $10,000 | 15% per mo for 1 yr |
| 2022-07-15 | 118 | $40,000 | 15% per mo for 1 yr |
| 2023-01-13 | 798 | $50,000 | 15% per mo for 1 yr |
| 2023-01-13 | 799 | $50,000 | 15% per mo for 1 yr |
| 2023-05-01 | 2023-00830 | $50,000 | 15% per mo for 1 yr |
| 2023-09-15 | 2023-03158 | $200,000 | 15% per mo for 1 yr |
| TOTAL | | $400,000 | |

pp.    Cornelius Willams:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-02-16 | 1081 | $8,000 + 400 | 15% per mo for 1 yr + 5% fee |
| 2023-04-05 | 2023-00518 | $13,400 + 670 | 15% per mo for 1 yr + 5% fee |
| 2023-08-15 | 2023-02518 | $20,000 | 15% per mo for 1 yr |
| TOTAL | | $42,470 | |

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

qq.    Yun Chun "Donna" Zhou:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2022-09-01 | 194 | $20,000 | 15% per mo for 1 yr |
| 2022-10-04 | 191 | $15,000 | 15% per mo for 1 yr |
| 2023-02-07 | 1003 | $5,000 | 15% per mo for 1 yr |
| 2023-08-01 | 2023-02235 | $40,000 | 15% per mo for 1 yr |
| 2023-08-01 | 2023-02236 | $5,000 | 15% per mo for 1 yr |
| 2023-08-01 | 2023-02237 | $55,000 | 15% per mo for 1 yr |
| 2023-08-12 | 2023-02422 | $40,000 | 15% per mo for 1 yr |
| 2023-08-12 | 2023-02423 | $15,000 | 15% per mo for 1 yr |
| 2023-08-25 | 2023-02677 | $22,000 | 15% per mo for 1 yr |
| TOTAL | | $217,000 | |

rr.    Hai Ying "Wendy" Zhou:

| Date | No. | Amount | Terms |
|------|-----|--------|-------|
| 2023-03-02 | 1314 | $30,000.00 | 15% per mo for 1 yr |
| 2023-03-03 | 1337 | $13,000.00 | 15% per mo for 1 yr |
| 2023-03-07 | 2303-00109 | $15,000.00 | 15% per mo for 1 yr |
| 2023-03-08 | 2303-00127 | $20,000.00 | 15% per mo for 1 yr |
| 2023-03-13 | 2303-00208 | $10,000.00 | 15% per mo for 1 yr |
| 2023-03-14 | 2303-00226 | $20,000.00 | 15% per mo for 1 yr |
| 2023-05-04 | 2023-00922 | $10,000.00 | 15% per mo for 1 yr |
| 2023-07-20 | 2023-02013 | $40,000.00 | 15% per mo for 1 yr |
| 2023-08-04 | 2023-02356 | $10,000.00 | 15% per mo for 1 yr |
| 2023-08-28 | 2023-02733 | $20,000.00 | 15% per mo for 1 yr |
| 2023-09-18 | 55 | $15,000.00 | 15% per mo for 1 yr |
| TOTAL | | $203,000 | |

**B.    Defendants' Investment Contracts and Notes Were "Securities"**

72.    Investors, including Plaintiffs, "loaned" money for Inventis to "invest," as detailed above.

73.    Plaintiffs loaned money to invest in a common enterprise. Specifically, their funds were pooled in Inventis accounts and returns were to be awarded in proportion to the amounts they invested.  Defendants promoted the investment as one in which Plaintiffs' returns fortunes were tied to the promoters' success.  For example, Le told at least some investors that she had access to a bank that generated 40% returns, which, in turn, allowed her to keep 20%, pay investors 15% and pay referral fees of 5%.

74.    Investors, including Plaintiffs, depended on Inventis to deploy their money in a manner that would be mutually beneficial.  Defendants were to perform all of the services necessary for the generation of returns for investors, all of whom were entirely passive.

75.    The foregoing elements satisfy the test for what constitutes a "security" under *Securities and Exchange Commission v. W. J. Howey Co.*, 328 U.S. 293 (1946): (1) an investment of money, (2) in a common enterprise, (3) with the expectation of profit, (4) to be derived from the efforts of others (the "Howey" test).

76.    Further, the Inventis agreements constitute investment contracts.  As such, they satisfy that definition of "securities" under 15 U.S.C. §§ 77b(a)(1) and 78c(a)(10) and Cal. Corp. Code § 25019.

77.    Each of the investment contracts also reflects a written promise by one party to pay principal and a "return consideration" to another party and, therefore, fall within the ordinary meaning of the term "notes" and, as such, likewise falls within the statutory definition of a "security" under 15 U.S.C. §§ 77b(a)(1) and 78c(a)(10) and Cal. Corp. Code § 25019.

78.     As investors, Plaintiffs were primarily motivated by the generation of profits, and Le and employees at her direction acting for and on behalf of Inventis, including Riley and Nguyen, represented that investor funds would be used for business enterprises in the Inventis Venture.  Plaintiffs expected, as promised, to receive monthly "return consideration" of 15% or 20% or, alternatively, at least 360% in "combined return" paid after a year, high rates of return that far exceed the rates available on loans or traditional investments.  Le told investors on behalf of Inventis that it would use their funds to invest in various business ventures that would she represented would generate sufficient returns to pay the promised rates of return.

79.     The notes were form documents that Plaintiffs had no opportunity to negotiate, and they had no restrictions regarding assignment or transfer.  A reasonable member of the investing public would deem the notes an investment, given their marketing as high return opportunities, the statements of investors that they viewed the funds as investments, and the language of the contracts stating that the loans were for the "explicit purpose of the Company investing in different emerging projects."  The agreements were not collateralized or insured and there is no other risk-reducing factor, such as another regulatory scheme, that would render the application of the securities laws unnecessary.

**C.     The Inventis Securities and Their Offering Were Not Registered**

80.     The offering of Inventis securities was not registered with the SEC or with the California Department of Financial Protection and Innovation and did not qualify for any exemption from registration under either federal or California law.

81.     Inventis and the individual Defendants offered and sold the securities through interstate commerce to investors, including Plaintiffs, in multiple states, and also within California.  They did so through general solicitation by promoting Inventis on the WoW website and through referrals from investors and employees to anyone in the community, ultimately reaching over 1,400 investors across

multiple states, all or most of whom had no pre-existing substantive relationship with Le or Luu.

82.    The Inventis securities offering far exceeded $10 million.  Inventis did not provide, and Plaintiffs as investors had no access to, audited financial statements or other information that registration would have required.

**D.    Defendants Made Misrepresentations in Selling Inventis Securities**

83.    Le, with the assistance and/or approval of Luu, made knowingly false representations concerning the terms of Plaintiff's investments in Inventis, and trained Inventis employees, including Riley and Nguyen, to make false promises regarding the same, which they did.  Le, Riley, Nguyen and other employees Le trained with the knowledge and approval of Luu made such promises during in-person conversations and presentations held at numerous times starting as early as November 2021 and continuing through 2023, usually at the Inventis offices in Tustin, Orange County, California.

84.    The central promise of the Inventis Scheme that Defendants pitched to investors, including Plaintiffs, was that, for a minimum investment of $5,000 in Inventis, investors would receive returns of either 15% paid monthly or 360% paid after one year, together with a return of principal after one year.  The investment contract between investors and Ventures echoed these promises, referring to investors as "lenders" and stating that the company "agrees to repay the Lender" in one of two ways as selected by the investor: a 15% rate in "monthly return consideration" or, depending on the agreement, either "a single premium to the Lender a 360% combined return as a Balloon payment at the end of the term of 12 months" or "a 15% rate compounded monthly in a 1 year term . . . [a]t the end of 12 months," which is effectively a 435% annual rate of return.

85.    The investment agreements also stated that they could be renewed at the end of the term.  Le, Luu and Inventis employees at their direction also

promised investors, including Plaintiffs, that their investments and returns thereon were "guaranteed," "safe," "insured" and/or completely legal.

86.    Defendants also made materially false statements concerning the use of funds from investors, including Plaintiffs.  On different occasions Defendants would represent that investor funds would go toward "building and construction," "commercial real estate," "startups," "investments in other countries" and "health insurance investments," among other things.  Le also led investors and employees to believe that she had a relationship with an unnamed bank that was providing her with sufficient returns to make the payments, such that, for example, if Le "gave a bank $100,000 that could be leveraged for $1 million."  She led some to believe that she in fact had her own bank, or a "foreign" or "Native American" bank, and told numerous investors, including Plaintiffs, at minimum that she "had access" to a bank that provided 40% returns, of which 20% went to Le, 5% went to referral fees and 15% to investors.

87.    Specifically regarding use of funds, the "Inventis Ventures LLC Contract Agreement" provided to investors and signed on behalf of Inventis by Le, or employees that Le authorized to sign on her behalf, stated that "in Consideration of the Lender loaning certain monies to the Company, as a form of JVA (Joint Venture Arrangement) this agreement is extended with the explicit purpose of the Company investing in different emerging projects in its investment portfolio."

88.    At other times, Le and Inventis employees at her direction, including Riley and Nguyen, told people that the specific use of funds by Inventis did not matter because the funds were "guaranteed" and "safe."  Investors were told to "Trust me," that "all will be okay," and "this is not a scam" or has been reviewed and confirmed legal.  These and other representations regarding use of funds described in the above paragraphs were made on multiple occasions starting as early as November 2021 and continuing through late 2023 and early 2024, typically at Inventis's offices in Tustin, California.  Based such representations,

-28-

investors such as Plaintiffs understood that Inventis would use investor money to generate returns for them.

**1)  Defendants' Representations Regarding the Terms of Plaintiffs' Investments and Use of Their Funds Were False and Misleading.**

89.     Representations such as those set forth above that Le made, and trained employees such as Riley and Nguyen to make, and which Luu knew of and allowed to be made, to Plaintiffs as investors regarding the terms of their investments in Inventis and the sources of the returns on their investments, were false and misleading.

90.     The representations about the use of investors' funds and source of their returns were false and misleading because Plaintiffs' funds in fact were used to pay returns to other investors, referral fees and for the personal benefit of Le and Luu and, on information and belief, to reward Riley and Nguyen for convincing so many unsuspecting individuals to part with their money.

91.     The representations about the terms of an investment in Inventis – high monthly or annual investment gains in combination with a return of their invested principal – were false and misleading to Plaintiffs because they did not receive either their promised returns or return of capital, and Defendants knew them to be false because they knew they had no means to pay such returns or to return principal.

92.     The representations that investor funds were guaranteed and safe were false and misleading because, in light of the foregoing, an investment in Inventis was neither guaranteed nor safe.

**2)  The False and Misleading Representations Were Material.**

93.     The representations regarding the use of funds and sources of returns made by Inventis through Le, Luu and their employees, including Riley and Nguyen, were material to Plaintiffs in that they were important to them as investors in deciding whether to provide funds to Inventis in order to obtain such returns.

94.     The representations regarding the terms of Plaintiffs' investments made by Inventis through Le, Luu and their employees also were material to Plaintiffs, as the represented high returns were important to them in determining whether to invest in Inventis.

95.     The representations regarding the "safety" of Plaintiffs' investments made by Inventis through Le, Luu and their employees, including Riley and Nguyen, also were material to Plaintiffs since believing their funds would be safe was important to them as investors in deciding whether to make their investments.

**E.     The Inventis Securities and Defendants' Misrepresentations Concerning Them Consituted a Scheme to Defraud Plaintiffs and Other Investors**

96.     Le, Luu, Riley, Nguyen and Inventis engaged in a course of conduct to deceive investors, including Plaintiffs.  They made and disseminated false and misleading statements to investors about the use of their funds, the source of their promised investment returns, and the safety of their investments.  They also engaged in additional deceptive acts in furtherance of their scheme.  For example, contrary to Defendants' representations to investors, Inventis used the money that it raised from investors to make distributions to earlier investors, to pay referral fees for recruiting investors, and for the personal benefit of Le and Luu and, on information and belief, to reward Riley and Nguyen for helping to bring so much money in.

97.     Rather than a legitimate business focused on investing in "different emerging projects," Inventis amounted to a Ponzi-like scheme.  From statements made by the Securities and Exchange Commission ("SEC") in its own lawsuit against Le and Luu, SECURITIES AND EXCHANGE COMMISSION v. LINH THUY LE and TRONG HOANG LUU, U.S. Dist. Ct. (C.D. Cal.) Case No. 8:25-cv-02324, filed October 15, 2025 (the "SEC Case"), Plaintiffs are informed and believe and based thereon allege that Inventis raised at least $26.5 million from at least 1,400 investors from 12 or more states, distributed about $16.5 million to

-30-

investors in purported returns on their investments and approximately $1.5 million to Inventis employees and others as referral fees, and thus netted at least $8.5 million in investor funds.

98.    Also according to the SEC Case, Luu signed more than 95% of the checks issued from Inventis's bank accounts, including 96% of the checks used to make Ponzi-like interest payments to investors and to pay referral fees for finding investors, in an amount totaling over $18 million.  Luu was an active, knowing participant in the scheme to defraud Plaintiffs and other investors.

99.    Rather than running a legitimate business focused on investing in "different emerging projects," Le and Luu misappropriated investor funds for their own benefit.  For example, the SEC Case reveals that bank records show Luu transferring approximately $4.7 million to entities controlled by him and Le, about $1 million net to their personal accounts, and more than $880,000 net to purchase real estate and pay mortgages.  Reports from employees alleged in the SEC Case also claim that, during the period of the Inventis Scheme, Le catered monthly parties at restaurants and described travel to Dubai with Luu where she posted photos of limousines, luxury meals and paintings that she had purchased.  These represent just some of the many misuses of funds Inventis received from investors.

100.    The Inventis Scheme began to fall apart in about September 2023, when checks issued to investors started bouncing and Inventis eventually stopped making payments altogether.  While these things happened, Le and Luu misappropriated substantial amounts of money from Inventis' bank accounts for their personal use rather than use those funds to pay investors or make investments for the benefit of investors.  For example, according to the SEC Case, on October 20, 2023, a wire transfer moved $679,913.28 from an Inventis account to an account Le and Luu controlled in the name of TBD Miracles Production ("TBD").  On November 16, 2023, another $350,000 moved from Inventis to TBD.  Over the course of December 2023 and January 2024, over $1,000,000 in Inventis funds got

moved to other accounts controlled by Le and Luu, including to Wow Construction ($500,000) and the Luu Le Family Trust (approximately $300,000).

101.   During this time, even though Inventis had ceased making regular distributions, Le and Luu directed employees to continue to sign investors up to new contracts.  The SEC Case notes, for example, that Le met with an investor in her home on or about November 1, 2023, where she promised the investor monthly returns and encouraged him to invest $200,000.  Bank records described in the SEC Case reflect that Inventis received over 130 additional investments, totaling nearly $4.4 million, from September to the end of 2023 and into 2024.

102.   Le and Inventis employees at Le's direction, including Riley and Nguyen, made false and misleading statements to investors and engaged in other deceptive acts to lull investors into thinking they would recoup their funds.  For example, according to the SEC Case, Le and Inventis employees at Le's direction, including Riley and Nguyen, told investors that "bank audits" and "banking compliance issues" caused Inventis to cease payments and restructure, and that with additional time Inventis would resume the program and pay people back.

103.   Inventis then pivoted to directing investors to other schemes so that they could recover the funds previously invested in Inventis.  First, beginning in or around November 2023, Le directed investors to open and fund an account at Apex Bank, a purported "sovereign bank," to recover their funds.  The Georgia Department of Banking and Finance had already issued an order in September 2023 mandating that Apex Bank cease and desist conducting business as a bank because it had never been registered as a bank.

104.   Next, when a group of investors met Le and Luu at their home, both Le and Luu told those investors that, in order for them to receive the funds they were promised under the Inventis scheme, those investors had to open and fund accounts with Trage Technologies, Ltd. ("Trage"), a digital asset scheme.  Luu told an investor, as alleged in the SEC Case, that the investor would only receive the

-32-

promised Inventis payments to the Trage account if the investor did not withdraw funds from that account.  Trage was later charged with being an unregistered offering and fraud by the California Department of Financial Protection and Innovation in violation of California Corporations Code Sections 25110 and 25401, and by the Texas State Securities Board for violations of Texas Securities Act Sections 4003.001 and 4004.051.

105.   At another point, the SEC Case alleges that Inventis advertised a different digital asset scheme involving "USDT," a stable coin, that would purportedly provide 36% returns.  Le additionaly told employees that she was immune from prosecution, and threatened that if investors pursued legal action or complained to law enforcement they would not receive their money back.

106.   A venture called "Vivere Inicio," about which Plaintiffs could find no information, was also presented as an opportunity similar to Inventis to at least one Plaintiff in December 2023.  Also late in 2023 and into 2024, at least two other Plaintiffs were steered to similar investments in Golden Trading, and at least one other to GO11.  As such, Plaintiffs are informed and believe and on such grounds allege that Vivere Inicio, Golden Trading and GO11 were or became part of the Inventis Scheme, and for that reason have been named as Defendants herein.

**F.     Le and Luu Acted with Scienter, or at Least Recklessly and Negigently**

107.   Le, Luu, Riley and Nguyen acted with scienter in carrying out the scheme to defraud and, for Le, Riley and Nguyen, in making the false and misleading statements to investors, including Plaintiffs.  They also acted negligently in carrying out the Inventis Scheme and, for Le, Riley and Nguyen, in making the false and misleading statements.  That is, Le, Luu, Riley and Nguyen failed to exercise the level of care that a reasonable person would have exercised under the same circumstances.

108.    The facts supporting that Le, Luu, Riley and Nguyen acted with scienter or at least failed to act reasonably under the circumstances include the following:

    a.    Le, Riley and Nguyen,  acted with scienter, or at a minimum, were deliberately and consciously reckless.  They made false and misleading statements to investors, including Plaintiffs, regarding the terms of the investment, the use of funds by Inventis, the source of returns and the safety of investment.  Le signed agreements with investors making false and misleading statements regarding the terms of the investment, the use of funds by Inventis and the source of returns.  She instructed Inventis employees, including Riley and Nguyen, to make false and misleading statements regarding the terms of the investment, the use of funds by Inventis, the source of returns and the safety of investment.  They continued to make these false and misleading statements after Inventis was no longer able to make payments to investors.  Le personally benefitted by receiving investor funds to her and Luu's bank accounts and using investor monies to fund the purchase of properties and for other personal uses and, on information and belief, Riley and Nguyen similarly so benefitted personally.

    b.    Luu also acted with scienter, or at a minimum, was deliberately and consciously reckless.  He was present while Le and others made false statements to investors, including Plaintiffs, and he monitored camera feeds showing interactions between employees, including Riley and Nguyen, and investors.  He controlled Inventis's bank accounts, he received and handled investor funds, directed misuse of new investor funds to pay previous investors, and personally benefitted by transferring investor funds to his and Le's bank accounts and using investor monies to fund the purchase of properties and for other personal uses.

-34-

**G.**   **Le, Luu, Riley and Nguyen Obtained Money and Property as a Result of the Scheme**

109.   Le and Luu obtained money and property as a result of the Inventis Scheme.  They transferred about $4.7 million, net, of Inventis funds to entities controlled by them, and approximately $1 million, net, of Inventis funds to their personal accounts.  They also used more than $880,000, net, of Inventis funds to purchase real estate and pay for mortgages.  On information and belief, Riley and Nguyen also gained financially as a reward for duping so many into funneling so much money into the Inventis Scheme.

110.   These amounts do not include all of the funds Inventis received from investors in the form of cash or all of the cash payments for distributions, referral fees, and to Le, Luu, Riley and Nguyen personally.  Plaintiffs are informed and believe and based thereon allege that discovery in this action will reveal more diversion and personal use of Inventis funds by Le, Luu, Riley and Nguyen.

## FIRST CAUSE OF ACTION

Fraud in Connection with Sale of Securities in Violation of Exchange Act §10(b),

15 U.S.C. § 78j, and Rule 10b-5 Thereunder

(Against All Defendants)

111.   Plaintiffs reallege and incorporate by this reference each and every allegation in paragraphs 1 through 110, above, as though fully set forth at this point.

112.   In connection with the purchase or sale of securities, Defendants made material misstatements, false statements and omissions to investors.  They made numerous false and misleading statements both in the investment agreements at issue and in oral statements made or directed during the securities offering, including: (i) statements in the agreements that Inventis would use the funds to "invest in different emerging projects in its investment portfolio" and oral statements describing the use of funds for various investments, when in fact the

-35-

funds were used to pay investor returns, referral fees, and for Defendants' own benefit; (ii) written and oral promises that Inventis would pay monthly returns of 15% or annual returns of at least 360% and a return of capital at the end of one year when, in reality, Plaintiffs did not receive either their returns or the return of capital; and (iii) statements that investor funds were guaranteed and safe and constituted a legal investment when, in reality the funds were neither guaranteed nor safe and the Inventis Scheme in fact violated federal securities laws.

113.    In connection with the purchase or sale of securities, Defendants engaged in a course of conduct to deceive investors.  They made and disseminated false and misleading statements about the use of funds, the source of the returns, and the safety of the investments.  Le and Luu were signatories to Inventis bank accounts, made payments out of the accounts, handled investor funds, took money to the bank, and engaged in Ponzi-like payments, passing the payments off as returns on investment when, in fact, they were payments of other investor's capital. Defendants furthered the scheme by lulling investors, including Plaintiffs, into feeling their investments were secure after the initial investments were made and after the scheme collapsed, reassuring investors that they would pay their promised returns and referring them to various schemes that would allegedly allow them to recoup the funds they had invested in Inventis.

114.    By engaging in the conduct described above, Defendants, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.  In doing so, Defendants acted with scienter.

115.   By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rules 10b-5(a), 10b-5(b), and 10b-5(c) thereunder, 17 C.F.R. §§ 240.10b-5(a), 240.10b-5(b) & 240.10b-5(c).

116.   As a direct and proximate result of Defendants' violations, Plaintiffs suffered damages in the form of funds they provided to Defendants and lost, in an amount totaling nearly $3 million dollars, allocable to each Plaintiff as set forth in paragraph 71, above.

## SECOND CAUSE OF ACTION

Control Person Liability Under 15 U.S.C. § 78t

(Against Defendants Le and Luu)

117.   Plaintiffs reallege and incorporate by this reference each and every allegation in paragraphs 1 through 116, above, as though fully set forth at this point.

118.   If and to the extent not otherwise liable directly for the violations of Exchange Act section 10(b) and Rule 10b-5 thereunder, Le and Luu have liability as control persons of Inventis, jointly and severally, for its acts in violation thereof, and for all damages directly and proximately caused to Plaintiffs, and each of them, thereby.

## THIRD CAUSE OF ACTION

Sale of Securities by False Statements in Violation of Securities Act § 12,

15 U.S.C. § 77l

(Against All Defendants)

119.   Plaintiffs reallege and incorporate by this reference each and every allegation in paragraphs 1 through 110, above, as though fully set forth at this point.

120.   In connection with the offer or sale of securities, Defendants made to investors, including Plaintiffs, untrue statements of material fact, and/or omitted to

-37-

state material facts necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading, in violation of Section 12 of the Securities Act of 1933. They did so by means of communication in interstate commerce, by wire, mail and orally, including by delivering Plaintiffs' investment contracts containing such untrue and misleading statements by such means.

121. Defendants' untrue or misleading statements of material fact, or omissions to state material facts so that statements made would not mislead, include the following among many other material false statements and omissions: (i) statements in the agreements that Inventis would use the funds to "invest in different emerging projects in its investment portfolio" and oral statements describing the use of funds for various investments, when in fact the funds were used to pay investor returns, referral fees, and for Defendants' own benefit; (ii) written and oral promises that Inventis would pay monthly returns of 15% or annual returns of at least 360% and a return of capital at the end of one year when, in reality, Plaintiffs did not receive either their returns or the return of capital; and (iii) statements that investor funds were guaranteed and safe and constituted a legal investment when, in reality the funds were neither guaranteed nor safe and the Inventis Scheme in fact violated federal securities laws. Such untrue statements of material fact or omissions of fact to make statements not false or misleading violate Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2).

122. As a direct and proximate result of their statements and omissions in violation of the cited statute, Defendants are liable to Plaintiffs for the consideration they paid for the securities that were misrepresented to them, in a total amount of approximately $3 million, allocable to each Plaintiff as set forth above in paragraph 71 hereof.

1

## FOURTH CAUSE OF ACTION

Sale of Unregistered Securities in Violation of Cal. Corp. Code § 25110

(Against All Defendants)

123.   Plaintiffs reallege and incorporate by this reference each and every allegation in paragraphs 1 through 110, above, as though fully set forth at this point.

124.   The investment contracts into which Plaintiffs entered with Inventis constitute "securities" under federal and California law.  Inventis issued and/or offered to and in fact did sell these securities by offering its investment contracts to Plaintiffs in exchange for the consideration provided for in each.  Plaintiffs purchased those securities by paying the consideration specified in their investment contracts as detailed above in paragraph 71 hereof.

125.   No registration statements have been filed with any state or federal government entity or have been in effect with respect to any offering of securities by Inventis through its investment contracts.  The offering in connection with each investment contract thus violates Cal. Corp. Code section 25110, which makes it "unlawful for any person to offer or sell in this state any security in an issuer transaction (other than in a transaction subject to Section 25120), whether or not by or through underwriters, unless such sale has been qualified" by a federal or state registration statement.

126.   "Any person who violates Section 25110 … shall be liable to any person acquiring from them the security sold in violation of that section, who may sue to recover the consideration they paid for that security with interest thereon at the legal rate, and reasonable attorney's fees …."  Cal. Corp. Code § 25503. Plaintiffs collectively paid approximately $3 million to purchase the unregistered securities of Inventis, which Plaintiffs are entitled to recover, plus interest thereon and the fees incurred by their attorneys to obtain such recovery.

-39-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### FIFTH CAUSE OF ACTION

Sale of Securities by False Statements in Violation of Cal. Corp. Code § 25401

(Against All Defendants)

127.   Plaintiffs reallege and incorporate by this reference each and every allegation in paragraphs 1 through 110, above, as though fully set forth at this point.

128.   California Corporations Code section 25401 makes it illegal to "offer or sell a security in this state . . . by means of any written or oral communications which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made . . . not misleading."

129.   As established above, the investment contracts into which Defendants induced Plaintiffs to enter constitute "securities" as that term is understood and used under federal and California law.  Plaintiffs have detailed above the false and misleading statements Defendants made in connection with their sale of such securities, including without limitation their representations that: (i) Inventis would use the funds to "invest in different emerging projects in its investment portfolio" for various investments, when in fact the funds were used to pay investor returns, referral fees, and for Defendants' own benefit; (ii) Inventis would pay monthly returns of 15% or annual returns of at least 360% and a return of capital at the end of one year when, in reality, Plaintiffs did not receive either their returns or the return of capital; and (iii) investor funds were guaranteed and safe and constituted a legal investment when, in reality the funds were neither guaranteed nor safe and the Inventis Scheme in fact violated federal and state securities laws.

130.   "Any person who violates Section 25401 shall be liable to the person who purchases a security from … that person, who may sue either for rescission or for damages ….  Upon rescission, a purchaser may recover the consideration paid for the security, plus interest at the legal rate ….  Damages recoverable under this section by a purchaser shall be an amount equal to the difference between (a) the

-40-

price at which the security was bought plus interest at the legal rate from the date of purchase and (b) the value of the security …. In addition to the relief described above, the court *shall* award reasonable attorney's fees and costs to a prevailing purchaser or seller who succeeds in establishing a right to the relief provided by this section." Cal. Corp. Code § 25501 (emphasis added).

131. Plaintiffs paid the prices established by their contracts as set forth above in paragraph 71 hereof, and their purchases had a value of zero because Defendants did not pay Plaintiffs what their investment contracts promised, or at all. Plaintiffs thus have a right to recover the nearly $3 million they expended for the worthless securities Defendants sold to them, plus interest from the dates of their losses at the legal rate and the fees incurred by their attorneys to obtain such recovery.

### SIXTH CAUSE OF ACTION

Control Person Liability Under Corp. Code § 25504

(Against Defendants Le and Luu)

132. Plaintiffs reallege and incorporate by this reference each and every allegation in paragraphs 1 through 110 and 123 through 131, above, as though fully set forth at this point.

133. If and to the extent not otherwise liable directly for the violations of Cal. Corp. Code sections 25110, 25501 and 25503, Le and Luu have liability as control persons of Inventis, jointly and severally, for its acts in violation thereof, and for all damages directly and proximately caused to Plaintiffs, and each of them, thereby. Specifically, "Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the

-41-

violation …, are also liable jointly and severally with and to the same extent as such person ….”  Cal. Corp. Code § 25504.

## SEVENTH CAUSE OF ACTION

Common Law Fraud

(Against All Defendants)

134.   Plaintiffs reallege and incorporate by this reference each and every allegation in paragraphs 1 through 110, above, as though fully set forth at this point.

135.   Defendants made numerous false representations and promises to Plaintiffs, and each of them.  These false representations and promises included the following made in or in connection with the written investment contracts that Defendants provided to every Plaintiff on or near the date that each contract bears: (i) that Inventis would use the funds to “invest in different emerging projects in its investment portfolio” for various investments; and (ii) that Inventis would pay monthly returns of 15% or annual returns of at least 360% and a return of capital at the end of one year.  To induce Plaintiffs to sign the investment contract containing these false statements, Defendants represented to each Plaintiff at or near the date on which each signed his or her contract(s) that their funds were “guaranteed” and “safe” and constituted an investment compliant with law.

136.   The foregoing representations and promises were false when made, and Defendants knew them to be false, in that: (i) Defendants used the funds they received from Plaintiffs to pay investor returns, referral fees, and for Defendants’ own benefit rather than for Inventis to “invest in different emerging projects in its investment portfolio” as represented and promised; (ii) Defendants did not provide Plaintiffs the percentages promised on their investments or the return of their principal despite having promised both, which they intended not to honor when making the promises because they intended to use Plaintiffs’ funds for themselves or for uses other than making “investments” that Defendants knew did not exist;

-42-

and (iii) Defendants knew Plaintiffs' funds were neither "guaranteed" and nor "safe" when they represented them as such, because they knew the funds would not be used to make the investments they promised but rather would go to pay back other investors or for Defendants' own use.

137.   Defendants made the foregoing promises with the intent to induce Plaintiffs to rely upon them by providing money to Inventis to obtain the promised return from such investments.  Plaintiffs reasonably so relied because they saw other investors collecting on their investments and believed that the explanations of how their funds would be used were true and would yield the returns they were promised.

138.   As a direct and proximate result of their reasonable reliance on Defendants' false representations and promises, Plaintiffs suffered damages in the amounts they invested and lost in Inventis as detailed above in paragraph 71 hereof as to each Plaintiff, collectively totaling approximately $3 million for all Plaintiffs combined.

139.   Defendants made the false and misleading representations and promises intentionally for the purpose of stealing Plaintiffs' funds and converting them to their own use.  Most of the Plaintiffs in this case have little education, business experience and command of the English language.  Many are elderly and lost most if not all the money they had saved to live out the rest of their lives.  Defendants took advantage of these vulnerabilities to deprive most Plaintiffs of nearly everything they had.  As such, Defendants acted with malice, oppression and fraud as those terms are defined in Cal. Civ. Code § 3294(c) – that is: (1) "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others;" (2) "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights;" and (3) "intentional misrepresentation, deceit, or concealment of a

-43-

1   material fact known to the defendant with the intention on the part of the defendant

2   of thereby depriving a person of property or legal rights or otherwise causing

3   injury."

4       140.   Moreover, the entity Inventis liable co-extensively with Le and Luu

5   for punitive damages because it acted solely and entirely through those individuals

6   and thus "had advance knowledge of the unfitness of [Le and Luu] and employed

7   him [and] her with a conscious disregard of the rights or safety of others," and

8   Inventis itself "was personally guilty of oppression, fraud, or malice," and its

9   "advance knowledge and conscious disregard, authorization, ratification or act of

10  oppression, fraud, or malice [was] on the part of an officer, director, or managing

11  agent of the corporation" so as to make it fully liable for punitive damages to the

12  maximum amount allowed by law, which our courts have readily found awardable

13  and constitutional in amounts up to nine times actual damages.

14  **EIGHTH CAUSE OF ACTION**

15  Breach of Contract

16  (Against Ventures, Holdings, Golden Trading, GO11 and Vivere Inicio)

17      141.   Plaintiffs reallege and incorporate by this reference each and every

18  allegation in paragraphs 1 through 110, above, as though fully set forth at this

19  point.

20      142.   Plaintiffs all had written contracts with Inventis, each of which is

21  identified in paragraph 71, above.

22      143.   Plaintiffs all performed their contracts with Inventis.  Each Plaintiff

23  provided to Inventis the funds that their contracts specified for them to turn over to

24  Inventis.

25      144.   Inventis breached each of the contracts with Plaintiffs identified above

26  in paragraph 71 hereof.  More specifically, Inventis failed to provide the return

27  promised in the contracts and also did not give Plaintiffs back any of their principal

28  at the end of their contract terms.

-44-

145.   As a direct and proximate result of the breach by Inventis of its contracts with Plaintiffs, each Plaintiff suffered damages in the amount of unrealized gains and return of principal as set forth below:

a.   Frankie Alvarez:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 169 | $10,000 | 15%/mo for 1 yr | $28,000 |
| 367 | $5,000 | 15%/mo for 1 yr | $14,000 |
| 853 | $5,000 | 15%/mo for 1 yr | $14,000 |
| 1187 | $5,000 | 15%/mo for 1 yr | $14,000 |
| 2303-00273 | $5,000 | 15%/mo for 1 yr | $14,000 |
| 2023-02034 | $10,000 | 15%/mo for 1 yr | $28,000 |
| 2023-02577 | $10,000 | 15%/mo for 1 yr | $28,000 |
| | **$50,000** | | **$140,000** |

b.   Frida Aquino:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 243 | $10,000 | 20% per mo for 1 yr | $34,000 |
| 680 | $10,000 | 20% per mo for 1 yr | $34,000 |
| S0032 | $10,000 | 20% per mo for 1 yr | $34,000 |
| S0099 | $10,000 | 20% per mo for 1 yr | $34,000 |
| S122 | $40,000 | 20% per mo for 1 yr | $136,000 |
| S129 | $10,000 | 20% per mo for 1 yr | $34,000 |
| S142 | $10,000 | 20% per mo for 1 yr | $34,000 |
| **TOTALS** | **$100,000** | | **$340,000** |

c.    Caren Avedon:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 269 | $108,000 | 15% per mo for 1 yr | $302,400 |
| 270-1 | $72,000 | 15% per mo for 1 yr | $201,600 |
| 270-2 | $36,000 | 15% per mo for 1 yr | $100,800 |
| 735 | $40,000 | 15% per mo for 1 yr | $112,000 |
| 2023-01854 | $72,000 | 15% per mo for 1 yr | $201,600 |
| 2023-03680 | $54,000 | 15% per mo for 1 yr | $151,200 |
| 2023-02650 | $60,000 | 15% per mo for 1 yr | $168,000 |
| TOTALS | $442,000 | | $1,237,600 |

d.    Susan Avedon:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 271 | $6,000 | 15% per mo for 1 yr | $16,800 |
| TOTALS | $6,000 | | $16,800 |

e.    Carlos Barrera:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 2023-02918 | $10,000 | 15% per mo for 1 yr | $28,000 |
| TOTALS | $10,000 | | $28,000 |

f.    Antonieta Bernahola Talledo:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 548 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-01575 | $10,000 | 15% per mo for 1 yr | $28,000 |
| TOTALS | $20,000 | | $56,000 |

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

g.    Elsy Borja:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 386 | $5,000 | 435% annual for 1 yr | $26,750 |
| 21 | $10,000 | 435% annual for 1 yr | $53,502.50 |
| 385 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 119 | $20,000 | 435% annual for 1 yr | $107,000 |
| 1203 | $5,000 | 360% annual for 1 yr | $23,000 |
| 2023-01415 | $53,502.50 | 15% per mo for 1 yr | $149,807 |
| **TOTALS** | **$103,502.50** | | **$388,059.50** |

h.    Peter Bos:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 740 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 987 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2303-00209 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2303-00462 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-00512 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-00954 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-01231 | $20,000 | 15% per mo for 1 yr | $56,000 |
| 2023-01731 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-03146 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-02326 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-02828 | $10,000 | 15% per mo for 1 yr | $28,000 |
| | $50,000 | 15% per mo for 1 yr | $140,000 |
| **TOTALS** | **$170,000** | | **$476,000** |

Mr. Bos entered into two contracts, Nos. 2303-00462 and 2023-02146, in the name of his son-in-law, J.D. Royer, but paid the principal himself and so suffered the damages on those contracts.

i.    Fidelina Contreras:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 539 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2303-00496 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-02273 | $10,000 | 15% per mo for 1 yr | $28,000 |
| **TOTALS** | **$30,000** | | **$84,000** |

j.    Claudia De La Cruz:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 386 | $50,000 | 15% per mo for 1 yr | $140,000 |
| 576 | $5,000 | 15% per mo for 1 yr | $14,000 |
| 990 | $60,000 | 15% per mo for 1 yr | $168,000 |
| 2023-01-73 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-01990 | $100,000 | 15% per mo for 1 yr | $280,000 |
| 2023-02491 | $30,000 | 15% per mo for 1 yr | $84,000 |
| **TOTALS** | **$255,000** | | **$714,000** |

k.    Zenaida "Rose" De Leon:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| S015 | $10,000 | 20% per mo for 1 yr | $34,000 |
| S126 | $30,000 | 20% per mo for 1 yr | $102,000 |
| S127 | $10,000 | 445% annual for 1 yr | $54,500 |
| **TOTALS** | **$50,000** | | **$190,500** |

l.    Antonio De Los Santos:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 2023-02980 | $10,000 | 15% per mo for 1 yr | $28,000 |
| **TOTALS** | **$10,000** | | **$28,000** |

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

m.    Merari Diaz Ordaz:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 2023-00586 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-00682 | $5,000 | 15% per mo for 1 yr | $14,000 |
| 2023-01377 | $20,000 | 15% per mo for 1 yr | $56,000 |
| TOTALS | $35,000 | | $98,000 |

n.    Lizette Espinosa:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 2303-00250 | $8,300.00 | 15% per mo for 1 yr | $23,240 |
| 2303-00495 | $10,000.00 | 15% per mo for 1 yr | $28,000 |
| 2023-02319 | $40,000.00 | 15% per mo for 1 yr | $112,000 |
| TOTALS | $58,300 | | $163,240 |

o.    Estella Garcia:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| G-0161 | $10,000 | 360% annual for 1 yr | $46,000 |
| | $5,000 | 600% annual for 1 yr | $35,000 |
| TOTALS | $15,000 | | $81,000 |

p.    Joseph Garcia:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 2303-00238 | $15,000 | 15% per mo for 1 yr | $42,000 |
| G-0154 | $10,000 | 360% annual for 1 yr | $46,000 |
| TOTALS | $25,000 | | $88,000 |

q.    Carol Anne Gillespie:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 693 | $5,000 | 15% per mo for 1 yr | $14,000 |
| 982 | $30,000 | 360% annual for 1 yr | $138,000 |
| 987 | $20,000 | 15% per mo for 1 yr | $56,000 |
| TOTALS | $55,000 | | $208,000 |

r.    Soledad Glova:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 247 | $5,000 | 15% per mo for 1 yr | $14,000 |
| 2023-02740 | $11,000 | 15% per mo for 1 yr | $30,800 |
| TOTALS | $16,000 | | $44,800 |

s.    Dennis Gray:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 1027 | $20,000 | 360% annual for 1 yr | $92,000 |
| TOTALS | $20,000 | | $92,000 |

t.    Beata G. Grissom:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 2023-02640 | $15,000 | 15% per mo for 1 yr | $42,000 |
| TOTALS | $15,000 | | $42,000 |

u.    Edwin Guerra Hernandez:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 2023-01021 | $20,000 | 15% per mo for 1 yr | $56,000 |
| 2023-02752 | $50,000 | 15% per mo for 1 yr | $140,000 |
| TOTALS | $70,000 | | $196,000 |

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

1

v.    Charie Guzman:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 260 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 436 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 630 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 800 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-00838 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-01206 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-01580 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-02628 | $10,000 | 15% per mo for 1 yr | $28,000 |
| TOTALS | $80,000 | | $224,000 |

w.    Samantha Guzman:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 2023-01581 | $5,000 | 15% per mo for 1 yr | $14,000 |
| 2023-02625 | $10,000 | 15% per mo for 1 yr | $28,000 |
| TOTALS | $15,000 | | $42,000 |

x.    Sammy Guzman:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 966 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-01204 | $10,000 | 15% per mo for 1 yr | $28,000 |
| TOTALS | $20,000 | | $56,000 |

y.    Remberto Jara Jara:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 2023-02567 | $10,000 | 15% per mo for 1 yr | $28,000 |
| TOTALS | $10,000 | | $28,000 |

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

z.     Robert Kusenda:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 2023-02181 | $50,000 | 15% per mo for 1 yr | $140,000 |
| 2023-02305 | $30,000 | 15% per mo for 1 yr | $84,000 |
| TOTALS | $80,000 | | $224,000 |

aa.     Janice LaGesse:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 289 | $7,000 | 15% per mo for 1 yr | $19,600 |
| 168 | $25,000 | 360% annual for 1 yr | $115,000 |
| 849 | $25,000 | 360% annual for 1 yr | $115,000 |
| TOTALS | $57,000 | | $249,600 |

bb.     Saffiya Lakhani:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 2023-00847 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-02626 | $15,000 | 15% per mo for 1 yr | $42,000 |
| TOTALS | $25,000 | | $70,000 |

cc.     Pearle McDonald:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 288 | $5,000 | 15% per mo for 1 yr | $14,000 |
| TOTALS | $5,000 | | $14,000 |

dd.     Maria Metcalf:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 1026 | $10,000 | 360% annual for 1 yr | $46,000 |
| TOTALS | $10,000 | | $46,000 |

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

ee.    Anthony Millot:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| | $50,000 | 15% per mo for 1 yr | $140,000 |
| **TOTALS** | **$50,000** | | **$140,000** |

ff.    Alejandrina Navarro:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 763 | $15,000 | 15% per mo for 1 yr | $42,000 |
| **TOTALS** | **$15,000** | | **$42,000** |

gg.    Rose Noriega:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| | $50,000 | 15% per mo for 1 yr | $140,000 |
| **TOTALS** | **$50,000** | | **$140,000** |

hh.    David Novelli:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 165 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 166 | $30,000 | 15% per mo for 1 yr | $84,000 |
| **TOTALS** | **$40,000** | | **$112,000** |

ii.    Mohammad Patel:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 2023-00848 | $15,000 | 15% per mo for 1 yr | $42,000 |
| 2023-02627 | $30,000 | 15% per mo for 1 yr | $84,000 |
| **TOTALS** | **$45,000** | | **$126,000** |

jj.    Mauricio Poblete:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 2023-02739 | $11,000.00 | 15% per mo for 1 yr | $30,800 |
| **TOTALS** | **$11,000** | | **$30,800** |

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

kk.    Marc R. Sarbarneck:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 464 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2303-00107 | $20,000 | 15% per mo for 1 yr | $56,000 |
| 2023-01895 | $30,000 | 15% per mo for 1 yr | $84,000 |
| TOTALS | $60,000 | | $168,000 |

ll.    Cynthia "CC" Summerfield:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 88 | $25,000 | 435% annual for 1 yr | $133,750 |
| 89 | $25,000 | 15% per mo for 1 yr | $70,000 |
| TOTALS | $50,000 | | $203,750 |

mm.    Giuseppe Veneziano:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 366 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 2023-00598 | $10,000 | 15% per mo for 1 yr | $28,000 |
| TOTALS | $20,000 | | $56,000 |

nn.    Luis Vizcaino:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 119 | $10,000 | 15% per mo for 1 yr | $28,000 |
| 118 | $40,000 | 15% per mo for 1 yr | $112,000 |
| 798 | $50,000 | 15% per mo for 1 yr | $140,000 |
| 799 | $50,000 | 15% per mo for 1 yr | $140,000 |
| 2023-00830 | $50,000 | 15% per mo for 1 yr | $140,000 |
| 2023-03158 | $200,000 | 15% per mo for 1 yr | 560,000 |
| TOTALS | $400,000 | | $1,120,000 |

oo.     Cornelius Willams:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 1081 | $8,000 + 400 | 15% per mo for 1 yr + 5% fee | $22,800 |
| 2023-00518 | $13,400 + 670 | 15% per mo for 1 yr + 5% fee | $38,190 |
| 2023-02518 | $20,000 | 15% per mo for 1 yr | $56,000 |
| TOTALS | $42,470 | | $116,990 |

pp.     Yun Chun "Donna" Zhou:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 194 | $20,000 | 15% per mo for 1 yr | $56,000 |
| 191 | $15,000.00 | 15% per mo for 1 yr | $42,000 |
| 1003 | $5,000.00 | 15% per mo for 1 yr | $14,000 |
| 2023-02235 | $40,000.00 | 15% per mo for 1 yr | $112,000 |
| 2023-02236 | $5,000.00 | 15% per mo for 1 yr | $14,000 |
| 2023-02237 | $55,000.00 | 15% per mo for 1 yr | $154,000 |
| 2023-02422 | $40,000.00 | 15% per mo for 1 yr | $112,000 |
| 2023-02423 | $15,000.00 | 15% per mo for 1 yr | $42,000 |
| 2023-02677 | $22,000.00 | 15% per mo for 1 yr | $61,600 |
| TOTALS | $207,000 | | $579,600 |

qq.    Hai Ying "Wendy" Zhou:

| No. | Princ. Amt. | Terms | Damages |
|---|---|---|---|
| 1314 | $30,000.00 | 15% per mo for 1 yr | $84,000 |
| 1337 | $13,000.00 | 15% per mo for 1 yr | $36,400 |
| 2303-00109 | $15,000.00 | 15% per mo for 1 yr | $42,000 |
| 2303-00127 | $20,000.00 | 15% per mo for 1 yr | $56,000 |
| 2303-00208 | $10,000.00 | 15% per mo for 1 yr | $28,000 |
| 2303-00226 | $20,000.00 | 15% per mo for 1 yr | $56,000 |
| 2023-00922 | $10,000.00 | 15% per mo for 1 yr | $28,000 |
| 2023-02013 | $40,000.00 | 15% per mo for 1 yr | $112,000 |
| 2023-02356 | $10,000.00 | 15% per mo for 1 yr | $28,000 |
| 2023-02733 | $20,000.00 | 15% per mo for 1 yr | $56,000 |
| 55 | $15,000.00 | 15% per mo for 1 yr | $42,000 |
| **TOTALS** | **$203,000** | | **$568,400** |

146.    Contract damages for all Plaintiffs thus total nearly $9 million, and Plaintiffs have the right to statutory 10% simple annual interest on their respective damages from the date of each breach.

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants as follows:

1.    On the First Cause of Action:

a.    For damages in the amounts lost by each Plaintiff, totaling approximately $3 million for all Plaintiffs combined, allocated among each Plaintiff as set forth above in paragraph 71 hereof; and

b.    For interest thereon at the statutory rate of ten percent (10%) simple per annum.

2. <u>On the Second Cause of Action</u>:

    a. For damages from Le and Luu in the amounts lost by each Plaintiff, totaling approximately $3 million for all Plaintiffs combined, allocated among each Plaintiff as set forth above in paragraph 71 hereof; and

    b. For interest thereon at the statutory rate of ten percent (10%) simple per annum.

3. <u>On the Third Cause of Action</u>:

    a. For damages in the amounts lost by each Plaintiff, totaling approximately $3 million for all Plaintiffs combined allocated among each Plaintiff as set forth above in paragraph 71 hereof; and

    b. For interest thereon at the statutory rate of ten percent (10%) simple per annum.

4. <u>On the Fourth Cause of Action</u>:

    a. For damages in the amounts lost by each Plaintiff, totaling approximately $3 million for all Plaintiffs combined allocated among each Plaintiff as set forth above in paragraph 71 hereof;

    b. For interest thereon at the statutory rate of ten percent (10%) simple per annum;

    c. For reasonable attorneys' fees according to proof.

5. <u>On the Fifth Cause of Action</u>:

    a. For damages in the amounts lost by each Plaintiff, totaling approximately $3 million for all Plaintiffs combined allocated among each Plaintiff as set forth above in paragraph 71 hereof;

    b. For interest thereon at the statutory rate of ten percent (10%) simple per annum;

    c. For reasonable attorneys' fees according to proof.

1  6.  <u>On the Sixth Cause of Action</u>:

2      a.  For damages from Le and Luu in the amounts lost by each

3  Plaintiff, totaling approximately $3 million for all Plaintiffs combined

4  allocated among each Plaintiff as set forth above in paragraph 71 hereof;

5      b.  For interest thereon at the statutory rate of ten percent (10%)

6  simple per annum;

7      c.  For reasonable attorneys' fees according to proof.

8  7.  <u>On the Seventh Cause of Action</u>:

9      a.  For damages in the amounts lost by each Plaintiff, totaling

10  approximately $3 million for all Plaintiffs combined allocated among each

11  Plaintiff as set forth above in paragraph 71 hereof; and

12      b.  For punitive and exemplary damages adequate in light of the

13  net worth of each Defendant, including as enhanced by the money they stole

14  from Plaintiffs, to make an example of and to punish each of them for their

15  malicious, oppressive and fraudulent conduct.

16  8.  <u>On the Eighth Cause of Action</u>:

17      a.  For damages measured by the loss by each Plaintiff of the

18  benefit of the bargain provided by each or his or her contract(s), totaling

19  approximately $9 million for all Plaintiffs combined, and allocated among

20  each Plaintiff as set forth above in paragraph 145 hereof.

21

22

23

24

25

26

27

28

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

9.      <u>On all causes of action</u>:

       a.      For costs of suit; and

       b.      For such other and further relief as this Court may find just and proper.

DATED:  February 20, 2026                    /s/ John Genga

                              _____

                                John M. Genga
                             GENGA & ASSOCIATES
                             Attorneys for Plaintiffs

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand trial by jury on all issues so triable.

DATED:  February 20, 2026                    /s/ John Genga

_____

John M. Genga
GENGA & ASSOCIATES
Attorneys for Plaintiffs

COMPLAINT FOR FED & CA SECURITIES LAWS VIOLATIONS, FRAUD, BREACH OF CONTRACT